**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julio Cesar Bazurto-Romo, | No. CV-19-05135-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| William P. Barr, et al., | |
| Defendants. | |

Plaintiff Julio Cesar Bazurto-Romo challenges the denial of his application for a certificate of citizenship. Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (5). (Doc. 12.) The motion is fully briefed, and no party requested oral argument or an evidentiary hearing. For the reasons stated below, Defendants' motion is granted.

**I. Background**

Plaintiff Julio Cesar Bazurto-Romo was born in Mexico and entered the United States in 2006 with authorization to remain for six months. (Doc. 12-1 at 2.) After Plaintiff was convicted of drug-related offenses in state court, Immigration and Customs Enforcement ("ICE") placed Plaintiff in custody pending removal proceedings. (*Id.* at 2, 7-9.) ICE also issued a Notice to Appear charging Plaintiff as removable for remaining in the United States longer than permitted and for violating a state controlled substance law. (*Id.* at 2, 11-13.) Plaintiff was ordered removed and was subsequently removed on August

11, 2010.  (*Id.* at 2-3, 15-16, 18-19.)

Plaintiff attempted to reenter the United States on August 25, 2010, using identification documents issued in another name.  (*Id.* at 3.)  ICE charged Plaintiff as inadmissible for presenting himself as an imposter and placed Plaintiff in expedited removal proceedings.  (*Id.* at 3, 21.)  On September 2, 2010, this district convicted Plaintiff of knowingly possessing an identity document not lawfully issued to him with the intent that the document be used to gain unlawful entry into the United States.  (*Id.* at 3, 23-24.)  After serving his sentence, Plaintiff was removed on February 18, 2011.  (*Id.* at 3.)

Sometime around December 2012, Plaintiff again entered the United States.  (*Id.* at 3, 29.)  ICE placed Plaintiff in custody on August 11, 2015, and while in custody Plaintiff orally made a claim of citizenship derivative from his father, who acquired citizenship in 2010.  (*Id.* at 3-4, 28-30.)  ICE determined Plaintiff's claim was not factually supported after taking a sworn statement from Plaintiff's father.  (*Id.*)

Plaintiff's prior removal order was reinstated, and ICE charged him as removable for illegal reentry following removal.  (*Id.* at 4, 32.)  On August 26, 2015, Plaintiff was convicted in this district of unlawful entry, and on February 9, 2016, Plaintiff was removed after serving time for his conviction.  (*Id.* at 4, 34-35, 37-38.)

On February 18, 2016, Plaintiff filed a Form N-600 Application for Certificate of Citizenship with United States Citizenship and Immigration Services ("USCIS") and listed an address in Tucson, although the Department of Homeland Security ("DHS") has no record of Plaintiff legally entering the United States.  (*Id.* at 4, 40-44.)  USCIS denied Plaintiff's application on September 15, 2016, finding Plaintiff had not shown that his father "was physically present in the United States for ten years, at least five of which were after the age of fourteen, prior to [Plaintiff's] birth."  (*Id.* at 42.)  Plaintiff appealed to the Administrative Appeals Office, but the appeal was dismissed after Plaintiff failed to file a brief.  (*Id.* at 4, 47.)

**II.  Rule 12(b)(5) – Insufficient Service of Process**

When a plaintiff names a federal agency as a defendant, the plaintiff must serve the

appropriate agency head, the Office of the United States Attorney General in Washington, D.C., and the local United States Attorney's Office by registered or certified mail. Fed. R. Civ. P. 4(i). Plaintiff failed to do so here. On November 29, 2019, Plaintiff filed a copy of a certified mail receipt addressed to the "Civil Clerk at the United States Attorney's Office for the District of Arizona with a tracking number of "7008 1300 0001 1678 9392." (Doc. 10.) As of the filing of Defendants' motion to dismiss, this tracking number reflects the envelope as being "out for delivery" since December 16, 2019. (Doc. 12-2.) Plaintiff has not filed a signed certified mail receipt as proof of service on any Defendant.

Defendants therefore argue that the Court should dismiss this case under Rule 12(b)(5) because Plaintiff failed to properly serve them with process. To survive a Rule 12(b)(5) motion to dismiss, Plaintiff must show "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984). Defendants admit they have actual notice and that they are not prejudiced by the defective service. They argue, however, that dismissal is appropriate because Plaintiff has no justifiable excuse for failing to properly serve them. Plaintiff acknowledges that he failed to properly serve Defendants. He explains that none of the envelopes he sent were returned to him as undeliverable and speculates that the service failure must be due to human error outside his control. (Doc. 15-1.)

Plaintiff's explanation is not a justifiable excuse. A justifiable excuse is not "the expenditure of efforts that fall short of real diligence by the serving party." *Grant v. IRS*, No. MC-06-0079-PHX-DGC, 2006 WL 3716752, *2 (D. Ariz. Nov. 28, 2006) (quotation and citation omitted). Plaintiff sent service of process via certified mail. When he did not receive delivery confirmation, he should have followed up with the tracking number.

With that said, the Court is not *required* to dismiss the case under these circumstances. When a party fails to timely effect service of process, the Court "must dismiss the action without prejudice against that defendant *or order that service is made*

*within a specified time.*" Fed. R. Civ. P. 4(m). The Court therefore has discretion to order Plaintiff to properly serve Defendants within a specified time. Because the Court prefers whenever possible to resolve cases on their merits, it ordinarily would choose this less drastic sanction. But, for the reasons discussed below, dismissal is nevertheless appropriate because the Court lacks subject-matter jurisdiction over this case.[1] Accordingly, the Court will not postpone the inevitable by ordering Plaintiff to re-attempt service and instead will dismiss.

**III. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction**

Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's claim. The party invoking jurisdiction bears the burden of establishing that jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Plaintiff's complaint cites 28 U.S.C. §§ 1331, 1361, and the Administrative Procedure Act ("APA") as sources of subject-matter jurisdiction. (Doc. 1 at 2.) Plaintiff's complaint also claims that 8 U.S.C. § 1252 does not divest the Court of subject-matter jurisdiction. (*Id.*) In their motion to dismiss, Defendants methodically explain why §§ 1331, 1361, and the APA do not confer subject-matter jurisdiction, and why § 1252 precludes the Court from exercising jurisdiction over this case. (Doc. 12 at 10-11, 14-15.) In his response, Plaintiff fails to address any of these arguments or to otherwise defend the jurisdictional allegations in his complaint. (Doc. 15 at 2.) Instead, Plaintiff contends that subject-matter jurisdiction is conferred by 8 U.S.C. § 1503(a). (*Id.*)

By failing to address Defendants' arguments concerning §§ 1331, 1361, the APA, and 1252, Plaintiff has tacitly admitted that those provisions do not supply subject-matter jurisdiction. *See* LRCiv. 7.2(i). Nonetheless, the Court has examined the merits of Defendants' arguments and finds them well-taken.

First, Congress established § 1252(b)(5) as the sole manner in which a person in

---

[1] The Court's Rule 12(b)(1) analysis overlaps with the service of process inquiry because Plaintiff would not be prejudiced by a dismissal for lack of service if dismissal for lack of subject-matter jurisdiction is independently warranted. For this reason, the Court proceeds to the Rule 12(b)(1) analysis even though, as a technical matter, the Court lacks personal jurisdiction over Defendants because they have not been properly served. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

removal proceedings may obtain a declaration of nationality.  "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal."  8 U.S.C. § 1252(a)(5).  A person with a final order of removal must exhaust all administrative remedies and file a petition for review with the appropriate court of appeals.  8 U.S.C. § 1252(d).  Defendants argue that "Plaintiff had ample opportunity to have an immigration judge consider the merits of his derivative citizenship claim . . . or he could have raised his claim for consideration in connection with ICE's expedited order of removal in 2010 or ICE's reinstatement of his removal order in 2015."  (Doc. 12 at 11.)  Alternatively, Plaintiff could have appealed to the Board of Immigration Appeals ("BIA") or to the Ninth Circuit for review of his removal order.  (*Id.*)  The Court agrees.  Plaintiff raised his citizenship claim in the context of removal proceedings and he must pursue his claim through that process prior to independently raising it with this Court.  Section 1252(b)(5) operates to divest the Court of subject-matter jurisdiction.  *See Chau v. INS*, 247 F.3d 1026, 1028 n.2 (9th Cir. 2001) ("[O]nce removal proceedings have been initiated, a petition for review under 8 U.S.C. § 1252(b)(5) is the only avenue by which a person may seek a judicial determination of his or her status as a national of the United States.").

Next, § 1361 grants original jurisdiction in district courts to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Here, however, USCIS has already denied Plaintiff's application.  There is no action left for the Court to compel.  Plaintiff appears instead to simply disagree with the manner in which USCIS has adjudicated his application.  But under § 1361, the Court cannot direct an official to exercise judgment or discretion in a particular way.  *Wilbur v. U.S. ex rel. Kadrie*, 281 U.S. 206, 218 (1930).  Plaintiff's reliance on § 1361 therefore is misplaced.

Finally, the APA waives the federal government's immunity from suit "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity."  *Match-E-Be-Nash-She-*

*Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2204 (2012). Sovereign immunity is waived only where the plaintiff has "no other adequate remedy in a court," 5 U.S.C. § 704, and where no "other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." § 702. *See Idaho Aids Found. Inc. v. Idaho Hous. & Fin. Ass'n*, No. CV-04-155-S-BLW, 2008 WL 660178, *2 (D. Idaho Feb. 29, 2008). The APA cannot provide subject-matter jurisdiction here because, as previously noted, § 1252(b)(5) provides an adequate remedy and forbids the Court from hearing such a claim.[2]

Moving on to the only jurisdictional argument Plaintiff makes in his response, § 1503(a) permits any person within the United States who is denied a "right or privilege as a national of the United States" to "institute an action . . . for a judgment declaring him to be a national of the United States." However, "no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding." § 1503(a)(1). Defendants assert that this exception applies. (Doc. 12 at 10.) Plaintiff argues that the exception does not apply because "this action is not being brought while the Plaintiff is in removal proceedings." (Doc. 15 at 2.) The Court agrees with Defendants.

Determining citizenship is a threshold issue in every removal proceeding. *See Ng. Fung Ho v. White*, 259 U.S. 276, 284 (1922). Moreover, the relevant proceeding for purposes of § 1503(a)(1) is the proceeding in which the citizenship claim originated, not the proceeding in which the claim is being pursued. *Rios-Valenzuela v. DHS*, 506 F.3d 393, 398 (5th Cir. 2007). If "a citizenship claim finds its genesis outside of the context of removal proceedings, the exception is no bar to jurisdiction." *Id.* at 399. Here, Plaintiff's citizenship claim did not arise outside of removal proceedings. Rather, in 2015, Plaintiff made a derivative citizenship claim while facing the reinstatement of his removal order. It is evident Plaintiff made this claim as a defense against removal, and thus the claim of

---

[2] The APA, in conjunction with § 1331, may in some instances confer subject-matter jurisdiction over a claim seeking to compel an agency to perform an unreasonably delayed action or to conclude matters within a reasonable timeframe. 5 U.S.C. § 706(1). But USCIS already has adjudicated Plaintiff's N-600 application. Plaintiff's complaint therefore cannot reasonably be interpreted as seeking to compel the agency to perform an unreasonably delayed action.

derivative citizenship "arose by reason of, or in connection with" his removal proceedings. § 1503(a)(1). For these reasons, the Court lacks subject-matter jurisdiction under § 1503(a).

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 12) is **GRANTED**. The Clerk of the Court is directed to terminate this case.

Dated this 26th day of June, 2020.

Douglas L. Rayes
United States District Judge